TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
KATHARINE SCHONBACHLER
California Bar No. 222875
Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3172
    Facsimile: (213) 894-0142
    E-mail: Katie.Schonbachler@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ONE ANTIQUE ROMAN STATUE,<br><br>    Defendant. | No. 2:21-CV-03709<br><br>VERIFIED COMPLAINT FOR FORFEITURE<br><br>19 U.S.C. § 2609(a)<br><br>[C.B.P.] |

The United States of America brings this claim against the defendant One Antique Roman Statue, and alleges as follows:

**JURISDICTION AND VENUE**

1. This is a civil forfeiture action brought pursuant to 19 U.S.C. § 2609(a).

///

2. This court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this District pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff is the United States of America.

5. The defendant is One Antique Roman Statue (the "defendant statue") that U.S. Customs and Border Protection ("CBP") seized on June 15, 2016, at the Los Angeles/Long Beach Seaport.

6. The defendant statue is currently in the custody of CBP, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Axel Vervoordt ("Vervoordt"), Axel Vervoordt NV/SA, Meys & Zonen, NV, Noel Roberts Trust, Freeman Group, Inc. and Kim Kardashian, also known as Kimberly Noel Kardashian West, may be adversely affected by these proceedings. (Noel Roberts Trust, Freeman Group, Inc. and Kim Kardashian will be collectively referred to as the "Noel Roberts Trust").

## CULTURAL PROPERTY IMPLEMENTATION ACT

8. The forfeiture of cultural property is governed by the Cultural Property Implementation Act ("CPIA"). *See* 19 U.S.C. § 2601, *et seq.* In 1970, the United Nations Educational, Scientific and Cultural Organization ("UNESCO") met for its General Conference where the member state parties drafted the "Convention on Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property" (the "Convention"). The Convention established a framework for cooperation among state parties to end the pillaging of cultural property. *See* 51 Fed. Reg. 6905 (Feb. 27, 1986). As a party to the Convention, the United States enacted the CPIA to implement the Convention. *See* 19 U.S.C. §§ 2601, *et seq.*; 19 C.F.R. §§ 12.104, *et seq.*

9. The CPIA authorizes the United States to enter into bilateral agreements with member states to the Convention to protect that state's cultural patrimony from

being improperly smuggled or imported into the United States.  19 U.S.C. § 2602(a)(2). After a bilateral agreement becomes effective, a designated list of archaeological or ethnological materials of the state party covered by the agreement is published and included in U.S. regulations.  19 U.S.C. § 2604; 19 C.F.R. § 12.104g.  On January 23, 2001, pursuant to Article 1 of the bilateral agreement, the former U.S. Customs Service implemented restrictions on imports of archaeological material originating in Italy.  *See* Import Restrictions Imposed on Archaeological Material Originating in Italy, 66 Fed. Reg. 7399 (Jan. 23, 2001).  CBP subsequently extended the import restrictions in 2006, 2011, 2016, and 2021.  *See* Extension of Import Restrictions Imposed on Categories of Archaeological Material of Italy and Representing the Pre-Classical, Classical, and Imperial Roman Periods, 71 Fed. Reg. 3000 (Jan. 19, 2006); 76 Fed Reg. 3012 (Jan 19, 2011); 81 Fed Reg. 2086 (Jan 15, 2016); 86 Fed. Reg. 2255 (Jan. 12, 2021).  The import restrictions contain a list of designated archaeological or ethnological material. Relevant portions of the designated list include the following:

I.    Stone

    A.    Sculpture

        5.    Large Statuary- Primarily in marble, including fragments of statues.  Subject matter includes human and animal figures and groups of figures in the round.  Common types are large-scale, free-standing statuary from approximately 1 m to 2.5 m in height and life-size busts (head and shoulders of an individual).  Approximate date: 6th century B.C. to 4th century A.D.

Extension of Import Restrictions Imposed on Archaeological Material Originating in Italy and Representing the Pre-Classical, Classical, and Imperial Roman Periods, 76 Fed. Reg. 3012 (Jan. 19, 2011).

    10.    The CPIA prohibits importation of designated archeological or ethnological material, unless the importer provides a certification from the state party authorizing its importation or other documentation permitted by regulation.  19 U.S.C. §

2606; 19 C.F.R. §§ 12.104a(b) and 12.104c.  Permitted documentation from a state party includes a certificate, such as an affidavit, license, or permit from an authorized state party official under seal certifying that such exportation was not in violation of the laws of that country.  19 U.S.C. § 12.104c(a).  Alternatively, the importer must present satisfactory evidence that (1) the artifact was exported from the state party not less than 10 years before the date of entry and that neither the person for whose account the material is imported contracted for or acquired an interest in such material more than one year before the date of entry, or (2) the artifact was exported from the state party on or before the date of designation of the cultural property in the bilateral agreement.  19 C.F.R. §§ 12.104c(b) and (c).  Satisfactory evidence is defined to require declarations under oath from the importer and other statements from the seller.  *See* 19 U.S.C. § 2606(c) and 19 C.F.R. § 12.104c(d).

   11.   Without such documentation (or application of any exemptions outlined in 19 U.S.C. § 2611), the designated artifact is subject to seizure and forfeiture to the United States.  19 U.S.C. § 2609(a); 19 C.F.R. § 12.104e(a).

   19 U.S.C. § 2609 Seizure and forfeiture

   (a)   In general.  Any designated archaeological or ethnological material or article of cultural property, as the case may be, which is imported into the United States in violation of section 2606 of this title or section 2607 of this title shall be subject to seizure and forfeiture.

   § 12.104e Seizure and forfeiture

   (a) Whenever any designated archaeological or ethnological material is imported into the U.S. in violation of 19 U.S.C. § 2606, and the importer states in writing that he will not attempt to secure the certificate, documentation, or evidence, or the electronic equivalent, required by § 12.104c, or such certificate, documentation, or evidence, or the electronic equivalent, is not presented to the port director before the expiration of the time provided in § 12.104d, the material shall be seized and summarily forfeited to the U.S. in accordance with part 162 of this chapter.

# EVIDENCE SUPPORTING FORFEITURE

12. On or about May 3, 2016, a CBP officer contacted a Homeland Security Investigations ("HSI") Special Agent ("SA")[1] for assistance regarding a shipment that arrived at the Port of Los Angeles contained an antique statue (*i.e.*, the "defendant statue") that was possibly protected cultural property from Italy. The CBP Entry/Immediate Delivery Form 3461 that customs broker Masterpiece International, Limited ("Masterpiece International") submitted to CBP on behalf of Noel Roberts Trust listed the consignee and importer name as "Kim Kardashian dba Noel Roberts Trust" in Woodland Hills, California and described the merchandise in the shipment as: 40 pieces of "Antiques & Modern Furniture & Decorations Objects" with gross weight of 5000kg and valued at $745,882.00. The Bill of Lading submitted to CBP by Masterpiece International listed the shipper as Axel Vervoordt NV/SA, Meys & Zonen, NV in Belgium and the consignee as "Noel Roberts Trust, c/o Freeman Group, Inc." in Santa Monica, California.

13. The HSI SA requested that the defendant statue be detained until further research could be conducted. In the meantime, the CBP officer requested provenance documentation from the broker, Masterpiece International. The invoice provided by Masterpiece International identified the defendant statue as "Fragment of Myron's Samian Athena, Limestone, Roman, 1st – 2nd century A.D." The invoice also contained handwritten notations indicating that the defendant statue originated from Italy and was imported under Harmonized Tariff Schedule of the United States tariff number 9706.00.0060 (antiques of an age exceeding one hundred years).

14. On May 11, 2016, officers conducted a visual examination of the defendant statue and photographed it. The defendant statue consists of the lower half of a human figure. Below is a photograph of the defendant statue taken by an HSI SA on or about May 11, 2016.

---

[1] CBP officers and HSI special agents are collectively referred to as ("officers").



15. In May 2016, Masterpiece International provided CBP with a copy of an invoice dated November 14, 2012 purportedly for the defendant statue issued by Galerie Chenel in Paris, indicating Axel Vervoordt as the buyer. On the Galerie Chenel invoice, the object is described as "a large draped statue – Roman 1st – 2nd A.D."; the object's provenance is listed as "Old German collection, bought before 1980"; and the material that the object is made of is not indicated. On the invoice for the sale of the defendant statue by Vervoordt to Noel Robert Trust, dated March 11, 2016, the object is described as a "Fragment of Myron Samian Athena - limestone - 1st -2nd century A.D." The November 2012 Galerie Chenel invoice did not appear to be for the defendant statute because the term "a large draped statue" would refer to an entire/whole draped natural sized statue and a "fragment of Myron Samian Athena" would refer to only a portion of a statue, which is what defendant statue is. In addition, the invoice that Masterpiece International provided to CBP contained handwritten notations indicating that the defendant statue originated from Italy.

///

16. Masterpiece International also provided CBP with an unsworn affidavit signed by Robert Lauwers ("Lauwers"), dated May 2016. Lauwers was listed as the "Director of the Art-historical Department" of Alex Vervoordt NV. The affidavit stated that the defendant statue "does not originate from Italy." This statement contradicted several of the entry documents submitted, including the invoice, which indicated that the defendant statue originated from Italy.

17. On May 27, 2016, a HSI special agent met with two individuals who worked for Masterpiece International and explained the requirements under the CPIA. One of the individuals indicated that she would attempt to obtain the required documents from the exporter. No additional documents were provided to CBP or HSI.

18. On June 15, 2016, the defendant statue was seized pursuant to 19 U.S.C. § 2609(a) and 19 C.F.R. § 12.104e(a) for violation of 19 U.S.C. § 2606 because the evidence showed that the defendant statue was designated archeological or ethnological material, and the documents provided to CBP by Masterpiece International were insufficient to satisfy the CPIA's requirements.

19. In July 2016, HSI received information about the defendant statue from Italy's Carabinieri for the Protection of Cultural Heritage (Comando Carabinieri Tutela Patrimonio Culturale ("TPC")). The TPC is part of Italy's Ministry of Cultural Heritage and plays a role regarding the safety and protection of Italy's national cultural heritage. The TPC stated that they witnessed the defendant statue in Axel Vervoordt NV/SA's possession at The European Fine Art Fair ("TEFAF") on March 21, 2011 in Maastricht, Netherlands, which would contradict Axel Vervoordt NV/SA's representation that it purchased the defendant statue in 2012, the year on the invoice provided to CBP by Masterpiece International. The TPC requested that all efforts be made for the return of the defendant statue to Italy in accordance with the bilateral agreement between Italy and the United States.

///

20. Below is a photograph that TPC provided to HSI that TPC represented was taken by TPC of the defendant statue when it was on display in Vervoordt's booth at TEFAF on March 21, 2011.



21. The defendant statue was also examined by two professors with training and expertise in archeology and materials who opined that based on their analysis of the defendant statue was carved out of a medium- to course-grained calcitic marble.

22. In February 2018, an archaeologist from Italy's Ministry of Cultural Heritage conducted an analysis of the defendant statue. The archaeologist stated that the defendant statue is of classical Peplophoros style (early to mid-Roman Empire), which represents a copy of an original Greek sculpture. The archaeologist stated that the defendant statue appears to be the same statue that was photographed by the TPC in March 2011 at TEFAF. In the report, the archaeologist provided comparative scientific and iconographic elements that indicated the defendant statue was from Italy; opined that creations comparable to the defendant statue in terms of style and period were very common in Italy during the Roman Empire. The archaeologist stated the defendant

8

statute had not been reported as a fortuitous find nor the subject of a request for an export license, which both are compulsory by law in Italy since 1909.  Based on the information and scientific aspects the archaeologist provided, the archaeologist opined that the defendant statute was looted, smuggled and illegally exported from Italy.

23. Plaintiff alleges that the defendant statue was illegally imported and entered into the United States in violation of the CPIA.  Specifically, the defendant statue was part of the shipment described in paragraph 12 above, and is designated archaeological or ethnological material imported into the United States in violation of 19 U.S.C. § 2606.  As a result, the defendant statue is subject to forfeiture to the United States pursuant to 19 U.S.C. § 2609(a).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant statue;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant statue to the United States of America for disposition according to law; and

///

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: April 30, 2021

TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

   /s/Katharine Schonbachler
KATHARINE SCHONBACHLER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# VERIFICATION

I, Razmik Madoyan, hereby declare that:

1. I am a Supervisory Special Agent with the Homeland Security Investigations ("HSI") and the case agent for the forfeiture matter entitled <u>United States of America v. One Antique Roman Statue</u>.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed April 30, 2021 in Los Angeles, California.

_____
RAZMIK MADOYAN
HSI Supervisory Special Agent