TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
KATHARINE SCHONBACHLER (Cal. Bar No. 222875)
Assistant United States Attorney
Asset Forfeiture Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3172
     Facsimile: (213) 894-0142
     E-mail:  Katie.Schonbachler@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>ONE ANTIQUE ROMAN STATUE,<br><br>        Defendant. | NO. 2:21-cv-03709-ODW-GJS<br><br>PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST THE INTERESTS OF AXEL VERVOORDT, AXEL VERVOORDT NV/SA, MEYS & ZONEN, NV, NOEL ROBERTS TRUST, FREEMAN GROUP, INC., KIM KARDASHIAN, AND ALL OTHER POTENTIAL CLAIMANTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KATHARINE SCHONBACHLER<br><br>DATE: September 13, 2021<br>TIME: 1:30 p.m.<br>Ctrm: 5D<br>Before the Honorable Otis D. Wright II, United States District Judge |

PLEASE TAKE NOTICE that on September 13, 2021, at 1:30 p.m., plaintiff United States of America ("government" or "plaintiff") will present a Motion for the Entry of Default Judgment against the interests of Axel Vervoordt, Axel Vervoordt NV/SA, Meys & Zonen, NV, Noel Roberts Trust, Freeman Group, Inc., Kim Kardashian, and all other potential claimants before the Honorable Otis D. Wright II, United States District Court, Courtroom 5D, 5th Floor, First Street Courthouse, 350 W. 1st Street, Los Angeles, CA 90012.

The motion is brought pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Rule 55-1 of the Local Rules of Practice for the Central District of California.  The motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Declaration of Katharine Schonbachler, other facts appearing in the court's file, and such further evidence, oral or documentary, as may be presented prior to or at the hearing on this motion.

DATED: August 9, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

/s/ *Katharine Schonbachler*
KATHARINE SCHONBACHLER
Assistant United States Attorney
Asset Forfeiture Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

# TABLE OF CONTENTS

I.    THE POTENTIAL CLAIMANTS ARE IN DEFAULT .......................................... 1

II.   ARGUMENT ............................................................................................................ 7

      A.    THE STANDARD FOR ENTRY OF JUDGMENT BY DEFAULT .......... 7

           1.    THE EITEL FACTORS .......................................................... 7

           2.    PROCEDURAL REQUIREMENTS ...................................... 8

           3.    FAILURE TO FILE A VALID CLAIM AND ANSWER ................ 8

      B.    THE FACTS DEEMED ADMITTED BY THE FAILURE TO FILE A CLAIM OR ANSWER ESTABLISH THAT THE DEFENDANT STATUE WAS ILLEGALLY IMPORTED INTO THE UNITED STATES IN VIOLATION OF CUSTOMS LAWS ..................................... 9

      C.    THE COMPLAINT'S ALLEGATIONS ESTABLISH THAT THE DEFENDANT STATUE IS SUBJECT TO FORFEITURE ..................... 16

      D.    THE PROPOSED DEFAULT JUDGMENT ................................................ 17

III.  CONCLUSION ...................................................................................................... 18

i

# TABLE OF AUTHORITIES

**Description**                                                          **Page**

***FEDERAL CASES***

*Eitel v. McCool*,

  782 F.2d 1470 (9th Cir.1986)............................................................7

*Geddes v. United Financial Group*,

  559 F.2d 557 (9th Cir. 1977)..........................................................7

*PepsiCo v. Triunfo-Mex, Inc.*,

  189 F.R.D. 431 (C.D. Cal. 1999) ..................................................7

*TeleVideo Systems, Inc. v. Heidenthal*,

  826 F.2d 915 (9th Cir. 1987)..........................................................7

*United States v. $104,674.00*,

  17 F.3d 267 (8th Cir. 1994)............................................................9

*United States v. $11,918.00*,

  2007 WL 3037307 (E.D. Cal.) .......................................................8

*United States v. $148,840.00 In U.S. Currency*,

  521 F.3d 1268 (10th Cir. 2008)......................................................8

*United States v. $291,828.00 In U.S. Currency*,

  536 F.3d 1234 (11th Cir. 2008).....................................................16

*United States v. $50,200.00 in U.S. Currency*,

  76 F. Supp. 2d 1247 (D. Wy. 1999) ..............................................9

*United States v. $515,060.42 in U.S. Currency*,

  152 F.3d 491 (6th Cir. 1998)..........................................................8

*United States v. 2007 Chrysler 300 Touring*,

  Slip Copy, 2011 WL 1119701 (D.N.M.) ......................................8

*United States v. Approximately $194,752 in U.S. Currency*,

  Slip Copy, 2011 WL 3652509 (N.D. Cal.) ...................................7

*United States v. Currency $267,961.07,*

   916 F.2d 1104 (6th Cir. 1990) .......................................................................... 9

*United States v. Currency, U.S. $42,500.00,*

   283 F.3d 977 (9th Cir. 2002) ........................................................................... 16

*United States v. One 1985 Cadillac Seville,*

   866 F.2d 1142 (9th Cir. 1989) .......................................................................... 8

*United States v. One 2001 Cadillac Deville Sedan*,

   335 F. Supp. 2d 769 (E.D. Mich. 2004) ........................................................... 9

***FEDERAL STATUTES***

18 U.S.C. §  983(c)(1) ....................................................................................... 16

19 U.S.C. § 2601 ................................................................................................. 9

19 U.S.C. § 2602(a)(2) ........................................................................................ 9

19 U.S.C. § 2604 ............................................................................................... 10

19 U.S.C. § 2606 ................................................................................ 7, 11, 14, 16

19 U.S.C. § 2606(c) ........................................................................................... 11

19 U.S.C. § 2609 ............................................................................................... 11

19 U.S.C. § 2609(a) .............................................................................. 1, 11, 14, 16

19 U.S.C. § 2611 ............................................................................................... 11

50 U.S.C. §§ 3901-4043 .................................................................................. 6, 8

***FEDERAL RULES***

Fed. R. Civ. P. 55(a) ........................................................................................... 7

Fed. R. Civ. P. 55(b)(2) .................................................................................... 7, 8

Local Rule 55 ...................................................................................................... 8

Supplemental Rule C(6) ...................................................................................... 9

Supplemental Rule E(4)(b) .................................................................................. 1

Supplemental Rule G(3)(c) .................................................................................. 1

Supplemental Rule G(4)(a)(iv)(C) ........................................................................ 1

iii

Supplemental Rule G(5) ................................................................................ 6

**FEDERAL REGULATIONS**

19 C.F.R. § 12.104 ....................................................................................... 9

19 C.F.R. § 12.104a(b) ............................................................................... 10

19 C.F.R. § 12.104c ............................................................................. 10, 11

19 C.F.R. § 12.104c(a) ............................................................................... 10

19 C.F.R. § 12.104c(b) ............................................................................... 11

19 C.F.R. § 12.104c(c) ............................................................................... 11

19 C.F.R. § 12.104c(d) ............................................................................... 11

19 C.F.R. § 12.104d ................................................................................... 11

19 C.F.R. § 12.104e(a) ........................................................................ 11, 14

19 C.F.R. § 12.104g ................................................................................... 10

51 Fed. Reg. 6905 (Feb. 27, 1986) ............................................................. 9

66 Fed. Reg. 7399 (Jan. 23, 2001) ............................................................ 10

71 Fed. Reg. 3000 (Jan. 19, 2006) ............................................................ 10

76 Fed Reg. 3012 (Jan 19, 2011) .............................................................. 10

76 Fed. Reg. 3012 (Jan. 19, 2011) ............................................................ 10

81 Fed Reg. 2086 (Jan 15, 2016) .............................................................. 10

86 Fed. Reg. 2255 (Jan. 12, 2021) ............................................................ 10

**OTHER AUTHORITIES**

*Federal Practice and Procedure 3d* § 2688 .............................................. 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   THE POTENTIAL CLAIMANTS ARE IN DEFAULT

On April 30, 2021, the government filed a Verified Complaint for Forfeiture as to the defendant, One Antique Roman Statue (the "defendant statue"), pursuant to 19 U.S.C. § 2609(a).  *See* Declaration of Katharine Schonbachler ("Schonbachler Dec.") at ¶ 2.

Process was executed upon the defendant statue by the United States Customs and Border Protection ("CBP") in accordance with Supplemental Rule E(4)(b) and Supplemental Rule G(3)(c) on June 23, 2021.  Attached to the Schonbachler Dec. as Exhibit "A" is a true and correct copy of the executed process receipt filed with the court.  *Id*. at ¶ 3.

Beginning on May 3, 2021, notice of Civil Forfeiture was posted on an official government internet site (www.forfeiture.gov) for at least 30 consecutive days, as required by Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  Attached to the Schonbachler Dec. as Exhibit "B" is a true and correct copy of the internet proof of publication.  *Id*. at ¶ 4.

### Notice to Axel Vervoordt

On May 12, 2021, the United States sent notice of the Complaint to known potential claimant Axel Vervoordt ("Vervoordt") at the following last known address: in care of Michael McCullough, Pearlstein & McCullough LLP, 641 Lexington Avenue, Suite 1327, New York, NY 10022.  The notice was sent by United States Postal Service ("USPS") certified mail with a claim letter describing the defendant statue and giving notice as to the time within which a claim and answer were required to be filed.  Copies of the Complaint and the Notice of Seizure were also provided.  The USPS certified mail return receipt for the letter sent to Vervoordt in care of Michael McCullough, Pearlstein & McCullough LLP, 641 Lexington Avenue, Suite 1327, New York, NY 10022 indicates that the claim letter was received and accepted.  Attached to the Schonbachler Dec. as Exhibit "C" is a true and correct copy of the claim letter along with a copy of the

1

signed USPS return receipt card.  *Id*. at ¶ 5.

On May 12, 2021, the United States sent a second notice of the Complaint to known potential claimant Vervoordt at the following last known address: in care of Michael McCullough, Pearlstein & McCullough LLP, 641 Lexington Avenue, Suite 1327, New York, NY 10022.  The notice was sent by first class mail with a claim letter describing the defendant statue and giving notice as to the time within which a claim and answer were required to be filed.  Copies of the Complaint and the Notice of Seizure were also provided.  Attached to the Schonbachler Dec. as Exhibit "D" is a true and correct copy of the claim letter.  This envelope has not been returned to the government and is presumed delivered.  *Id*. at ¶ 6.

Notice to Axel Vervoordt NV/SA, Meys & Zonen, NV

On May 12, 2021, the United States sent notice of the Complaint to known potential claimant Axel Vervoordt NV/SA, Meys & Zonen, NV ("Vervoordt, NV") at the following last known address: in care of Michael McCullough, Pearlstein & McCullough LLP, 641 Lexington Avenue, Suite 1327, New York, NY 10022.  The notice was sent by USPS certified mail with a claim letter describing the defendant statue and giving notice as to the time within which a claim and answer were required to be filed.  Copies of the Complaint and the Notice of Seizure were also provided.  The USPS certified mail return receipt for the letter sent to Vervoordt, NV in care of Michael McCullough, Pearlstein & McCullough LLP, 641 Lexington Avenue, Suite 1327, New York, NY 10022 indicates that the claim letter was received and accepted.  Attached to the Schonbachler Dec. as Exhibit "E" is a true and correct copy of the claim letter along with a copy of the signed USPS return receipt card.  *Id*. at ¶ 7.

On May 12, 2021, the United States sent a second notice of the Complaint to known potential claimant Vervoordt, NV at the following last known address: in care of Michael McCullough, Pearlstein & McCullough LLP, 641 Lexington Avenue, Suite 1327, New York, NY 10022.  The notice was sent by first class mail with a claim letter describing the defendant statue and giving notice as to the time within which a claim and

2

answer were required to be filed.  Copies of the Complaint and the Notice of Seizure were also provided.  Attached to the Schonbachler Dec. as Exhibit "F" is a true and correct copy of the claim letter.  This envelope has not been returned to the government and is presumed delivered.  *Id*. at ¶ 8.

Notice to Noel Roberts Trust

On May 12, 2021, the United States sent notice of the Complaint to known potential claimant Noel Roberts Trust at its last known address at 21731 Ventura Blvd, Suite 300, Woodland Hills, CA 91364-1851.  The notice was sent by USPS certified mail with a claim letter describing the defendant statue and giving notice as to the time within which a claim and answer were required to be filed.  Copies of the Complaint and the Notice of Seizure were also provided.  According to the USPS website, the USPS certified mail sent to Noel Roberts Trust at 21731 Ventura Blvd, Suite 300, Woodland Hills, CA 91364-1851 was delivered on May 17, 2021.  Attached to the Schonbachler Dec. as Exhibit "G" is a true and correct copy of the claim letter along with a copy of the USPS certified mail receipt and a copy of the USPS tracking results.  *Id*. at ¶ 9.

On May 12, 2021, the United States sent a second notice of the Complaint to known potential claimant Noel Roberts Trust at its last known address at 21731 Ventura Blvd, Suite 300, Woodland Hills, CA 91364-1851.  The notice was sent by first class mail with a claim letter describing the defendant statue and giving notice as to the time within which a claim and answer were required to be filed.  Copies of the Complaint and the Notice of Seizure were also provided.  Attached to the Schonbachler Dec. as Exhibit "H" is a true and correct copy of the claim letter.  This envelope has not been returned to the government and is presumed delivered.  *Id*. at ¶ 10.

Notice to Freeman Group, Inc.

On May 12, 2021, the United States sent notice of the Complaint to known potential claimant Freeman Group, Inc. at its last known address at 3029 Wilshire Blvd 202, Santa Monica, CA 90403.  The notice was sent by USPS certified mail with a claim letter describing the defendant statue and giving notice as to the time within which a

3

claim and answer were required to be filed.  Copies of the Complaint and the Notice of Seizure were also provided.  The USPS certified mail sent to Freeman Group, Inc. at 3029 Wilshire Blvd 202, Santa Monica, CA 90403 was returned to the government. Attached to the Schonbachler Dec. as Exhibit "I" is a true and correct copy of the claim letter along with a copy of the returned envelope.  *Id*. at ¶ 11.

On May 12, 2021, the United States sent a second notice of the Complaint to known potential claimant Freeman Group, Inc. at its last known address at 3029 Wilshire Blvd 202, Santa Monica, CA 90403.  The notice was sent by first class mail with a claim letter describing the defendant statue and giving notice as to the time within which a claim and answer were required to be filed.  Copies of the Complaint and the Notice of Seizure were also provided.  The first class mail sent to Freeman Group, Inc. at 3029 Wilshire Blvd 202, Santa Monica, CA 90403 was returned to the government.  Attached to the Schonbachler Dec. as Exhibit "J" is a true and correct copy of the claim letter along with a copy of the returned envelope.  *Id*. at ¶ 12.

As also noted in paragraph 12 of the Complaint (Doc. # 1), the 2016 Bill of Lading for the defendant statue submitted to CBP listed the consignee as "Noel Roberts Trust, c/o Freeman Group, Inc." with this 3029 Wilshire Blvd 202, Santa Monica, CA 90403 address.  The notices were successfully delivered to Noel Roberts Trust's current address as noted above.  *Id*. at ¶ 13; *See* Complaint at ¶ 12.

<u>Notice to Kim Kardashian</u>

On May 12, 2021, the United States sent notice of the Complaint to known potential claimant Kim Kardashian ("Kardashian") at the following last known addresses:

      a.     West Hollywood, California;[1]

      b.     Woodland Hills, California; and,

      c.     Hidden Hills, CA.

---

[1] Pursuant to Local Rule 5.2-1, residential addresses have been omitted from this Motion.

The notices were sent by USPS certified mail with a claim letter describing the defendant statue and giving notice as to the time within which a claim and answer were required to be filed.  Copies of the Complaint and the Notice of Seizure were also provided.  According to the USPS website, the USPS certified mail sent to Kardashian in West Hollywood, California was delivered on May 18, 2021.  Attached to the Schonbachler Dec. as Exhibit "K" is a true and correct copy of the claim letter along with a copy of the USPS certified mail receipt and a copy of the USPS tracking results.  According to the USPS website, the USPS certified mail sent to Kardashian in Woodland Hills, California was delivered on May 17, 2021.  Attached to the Schonbachler Dec. as Exhibit "L" is a true and correct copy of the claim letter along with a copy of the USPS certified mail receipt and a copy of the USPS tracking results.  The USPS certified mail sent to Kardashian in Hidden Hills, California was returned to the government.  Attached to the Schonbachler Dec. as Exhibit "M" is a true and correct copy of the claim letter along with a copy of the returned envelope.  *Id*. at ¶ 14.

On May 12, 2021, the United States sent a second notice of the Complaint to known potential claimant Kardashian at the following last known addresses:

      a.     West Hollywood, California;

      b.     Woodland Hills, California; and,

      c.     Hidden Hills, CA.

The notices were sent by first class mail with a claim letter describing the defendant statue and giving notice as to the time within which a claim and answer were required to be filed.  The first class mail sent to Kardashian in West Hollywood, California has not been returned to the government and is presumed delivered.  Attached to the Schonbachler Dec. as Exhibit "N" is a true and correct copy of the claim letter.  The first class mail sent to Kardashian in Woodland Hills, California has not been returned to the government and is presumed delivered.  Attached to the Schonbachler Dec. as Exhibit "O" is a true and correct copy of the claim letter.  The first class mail sent to Kardashian in Hidden Hills, California has not been returned to the government and is presumed

delivered.  Attached to the Schonbachler Dec. as Exhibit "P" is a true and correct copy of the claim letter.  *Id*. at ¶ 15.

In accordance with Supplemental Rule G(5), the time for known potential claimants Axel Vervoordt, Axel Vervoordt NV/SA, Meys & Zonen, NV, Noel Roberts Trust, Freeman Group, Inc., and Kim Kardashian to file a claim in this action expired on June 16, 2021 and the time for filing an answer expired on July 7, 2021.  *Id*. at ¶ 16.

In accordance with Supplemental Rule G(5), all interested parties who did not receive direct notice were required to file a claim no later than 60 days after the first day of publication on an official internet government forfeiture site and an answer within 21 days thereafter.  The first day of publication of this action on the government forfeiture site was May 3, 2021.  Accordingly, the time to file a claim and answer for all interested parties expired on July 2, 2021 and July 23, 2021, respectively.  *Id*. at ¶ 17.

Plaintiff has not received a filed claim or answer from the known potential claimants or any other potential claimant.  *Id*. at ¶ 18.

On August 2, 2021, a Default by Clerk was entered against Axel Vervoordt, Axel Vervoordt NV/SA, Meys & Zonen, NV, Noel Roberts Trust, Freeman Group, Inc., and all other potential claimants.  Attached to the Schonbachler Dec. as Exhibit "Q" is true and correct copy of the Default by Clerk.  *Id*. at ¶ 19.

Based on information and belief, the known potential claimants are not minors or incompetent persons.  *Id*. at ¶ 20.

Based on information and belief, the known potential claimants do not serve in the U.S. military; accordingly, the Servicemembers Civil Relief Act of 2003 does not apply.  *Id*. at ¶ 21.

On the date of filing, this Motion for Default Judgment was served by first class mail on the known potential claimants Axel Vervoordt, Axel Vervoordt NV/SA, Meys & Zonen, NV, Noel Roberts Trust, Freeman Group, Inc., and Kim Kardashian at their last known addresses.  *Id*. at ¶ 22.

## II.   ARGUMENT

### A.   THE STANDARD FOR ENTRY OF JUDGMENT BY DEFAULT

#### 1.   THE EITEL FACTORS

After the Clerk has entered default for failure to plead or otherwise defend an action, the court may enter judgment by default on the plaintiff's complaint.  Fed. R. Civ. P. 55(a), 55(b)(2).  Default judgments "are more often granted then denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999) (Paez, J.).  When exercising this discretion, courts typically consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986) (the "*Eitel* factors").  Furthermore, when considering whether to grant default judgment, courts generally assume the factual allegations of the complaint to be true.  *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

The *Eitel* factors in this case weigh heavily in support of default judgment.  The plaintiff would be highly prejudiced if default judgment was not granted, because "it would be forced to continue the litigation even though no party has filed an answer or a claim."  *United States v. Approximately $194,752 in U.S. Currency*, Slip Copy, 2011 WL 3652509, *3 (N.D. Cal.).  Additionally, as discussed in detail below, the government has established that the defendant statue is designated archeological and ethnological material that was illegally imported into the United States as a part of the shipment described in ¶ 12 of the Complaint (Doc. # 1) in violation of the Cultural Property Implementation Act ("CPIA") and 19 U.S.C. § 2606, in particular.  Accordingly, the

forfeiture claim has substantive merit and the complaint is sufficient to establish that the defendant statue is subject to forfeiture. Furthermore, there is no dispute as to material facts, because no claimant has filed a valid answer in this case and there is no evidence that the default is due to excusable neglect. Finally, while policy considerations favor a decision on the merits, it is not possible to decide this case on the merits with respect to the defendant statue, since no potential claimant has filed an answer to contest forfeiture of the defendant statue. Therefore, default judgment is appropriate.

### 2.   PROCEDURAL REQUIREMENTS

A party seeking default judgment must establish: (a) when and against what party the default was entered; (b) the identification of the pleading to which default was entered; (c) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) that the Servicemembers Civil Relief Act does not apply; and (e) that notice has been served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2). L.R. 55. As set forth above, these procedural requirements have been met.

### 3.   FAILURE TO FILE A VALID CLAIM AND ANSWER

In order to contest a forfeiture action, a claimant must have article III and statutory standing. *United States v. $148,840.00 In U.S. Currency*, 521 F.3d 1268, 1273 & n. 3 (10th Cir. 2008); *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998); *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1148 (9th Cir. 1989). A verified claim is a prerequisite to establishing statutory standing. *United States v. 2007 Chrysler 300 Touring*, Slip Copy, 2011 WL 1119701, (D.N.M.) (citing *United States v. $11,918.00*, 2007 WL 3037307 (E.D. Cal.)). The known potential claimants were sent notices by the government of the requirement to file a claim on or before June 16, 2021, and an answer within 21 days thereafter. Schonbachler Dec. ¶ 16. Having failed to have done so, the known potential claimant has no statutory standing in

this matter.  *United States v. One 2001 Cadillac Deville Sedan*, 335 F. Supp. 2d 769, 772-3 (E.D. Mich. 2004) (claimant who did not comply with Supplemental Rule C(6) by filing a verified claim lacks statutory standing); *United States v. $50,200.00 in U.S. Currency*, 76 F. Supp. 2d 1247, 1253 (D. Wy. 1999) (same); *United States v. $104,674.00*, 17 F.3d 267, 268 (8th Cir. 1994) (strict compliance with Supplemental Rule C(6) is required); *United States v. Currency $267,961.07*, 916 F.2d 1104, 1108 (6th Cir. 1990) (same).  Therefore, default judgment is appropriate, and the facts of the complaint should be deemed admitted.

### B.   THE FACTS DEEMED ADMITTED BY THE FAILURE TO FILE A CLAIM OR ANSWER ESTABLISH THAT THE DEFENDANT STATUE WAS ILLEGALLY IMPORTED INTO THE UNITED STATES IN VIOLATION OF CUSTOMS LAWS

The government alleged the following facts in the complaint:

The defendant is One Antique Roman Statue that CBP seized on June 15, 2016 at the Los Angeles/Long Beach Seaport.  *See* Complaint at ¶ 5.

The forfeiture of cultural property is governed by the CPIA.  *See* 19 U.S.C. § 2601, et seq.  In 1970, the United Nations Educational, Scientific and Cultural Organization ("UNESCO") met for its General Conference where the member state parties drafted the "Convention on Means of Prohibiting and Preventing the Illicit Import, Export and Transfer of Ownership of Cultural Property" (the "Convention"). The Convention established a framework for cooperation among state parties to end the pillaging of cultural property.  *See* 51 Fed. Reg. 6905 (Feb. 27, 1986).  As a party to the Convention, the United States enacted the CPIA to implement the Convention.  *See* 19 U.S.C. § 2601, et seq.; 19 C.F.R. § 12.104, et seq.  *Id*. at ¶ 8.

The CPIA authorizes the United States to enter into bilateral agreements with member states to the Convention to protect that state's cultural patrimony from being improperly smuggled or imported into the United States.  19 U.S.C. § 2602(a)(2). After a bilateral agreement becomes effective, a designated list of archaeological or ethnological materials of the state party covered by the agreement is published and

included in U.S. regulations.  19 U.S.C. § 2604; 19 C.F.R. § 12.104g.  On January 23, 2001, pursuant to Article 1 of the bilateral agreement, the former U.S. Customs Service implemented restrictions on imports of archaeological material originating in Italy.  *See* Import Restrictions Imposed on Archaeological Material Originating in Italy, 66 Fed. Reg. 7399 (Jan. 23, 2001).   CBP subsequently extended the import restrictions in 2006, 2011, 2016, and 2021.  *See* Extension of Import Restrictions Imposed on Categories of Archaeological Material of Italy and Representing the Pre-Classical, Classical, and Imperial Roman Periods, 71 Fed. Reg. 3000 (Jan. 19, 2006); 76 Fed Reg. 3012 (Jan 19, 2011); 81 Fed Reg. 2086 (Jan 15, 2016); 86 Fed. Reg. 2255 (Jan. 12, 2021).  The import restrictions contain a list of designated archaeological or ethnological material.  Relevant portions of the designated list include the following:

I.    Stone

    A.    Sculpture

        5.    Large Statuary- Primarily in marble, including fragments of statues. Subject matter includes human and animal figures and groups of figures in the round. Common types are large-scale, free-standing statuary from approximately 1 m to 2.5 m in height and life-size busts (head and shoulders of an individual).  Approximate date: 6th century B.C. to 4th century A.D.

Extension of Import Restrictions Imposed on Archaeological Material Originating in Italy and Representing the Pre-Classical, Classical, and Imperial Roman Periods, 76 Fed. Reg. 3012 (Jan. 19, 2011).  *Id*. at ¶ 9.

The CPIA prohibits importation of designated archeological or ethnological material, unless the importer provides a certification from the state party authorizing its importation or other documentation permitted by regulation.  19 U.S.C. § 2606; 19 C.F.R. §§ 12.104a(b) and 12.104c.  Permitted documentation from a state party includes a certificate, such as an affidavit, license, or permit from an authorized state party official under seal certifying that such exportation was not in violation of the laws of that country.  19 C.F.R. § 12.104c(a).  Alternatively, the importer must present satisfactory

evidence that (1) the artifact was exported from the state party not less than 10 years before the date of entry and that neither the person for whose account the material is imported contracted for or acquired an interest in such material more than one year before the date of entry, or (2) the artifact was exported from the state party on or before the date of designation of the cultural property in the bilateral agreement.  19 C.F.R. §§ 12.104c(b) and (c).  Satisfactory evidence is defined to require declarations under oath from the importer and other statements from the seller.  *See* 19 U.S.C. § 2606(c) and 19 C.F.R. § 12.104c(d).  *Id*. at ¶ 10.

Without such documentation (or application of any exemptions outlined in 19 U.S.C. § 2611), the designated artifact is subject to seizure and forfeiture to the United States.  19 U.S.C. § 2609(a); 19 C.F.R. § 12.104e(a).

19 U.S.C. § 2609 Seizure and forfeiture

(a)     In general.  Any designated archaeological or ethnological material or article of cultural property, as the case may be, which is imported into the United States in violation of section 2606 of this title or section 2607 of this title shall be subject to seizure and forfeiture.

19 C.F.R. § 12.104e Seizure and forfeiture

(a)     Whenever any designated archaeological or ethnological material is imported into the U.S. in violation of 19 U.S.C. § 2606, and the importer states in writing that he will not attempt to secure the certificate, documentation, or evidence, or the electronic equivalent, required by § 12.104c, or such certificate, documentation, or evidence, or the electronic equivalent, is not presented to the port director before the expiration of the time provided in § 12.104d, the material shall be seized and summarily forfeited to the U.S. in accordance with part 162 of this chapter.

*Id*. at ¶ 11.

## EVIDENCE SUPPORTING FORFEITURE

On or about May 3, 2016, a CBP officer contacted a Homeland Security Investigations ("HSI") Special Agent ("SA") for assistance regarding a shipment that arrived at the Port of Los Angeles contained an antique statue (i.e., the "defendant statue") that was possibly protected cultural property from Italy.  The CBP

Entry/Immediate Delivery Form 3461 that customs broker Masterpiece International, Limited ("Masterpiece International") submitted to CBP on behalf of Noel Roberts Trust listed the consignee and importer name as "Kim Kardashian dba Noel Roberts Trust" in Woodland Hills, California and described the merchandise in the shipment as: 40 pieces of "Antiques & Modern Furniture & Decorations Objects" with gross weight of 5000kg and valued at $745,882.00.  The Bill of Lading submitted to CBP by Masterpiece International listed the shipper as Axel Vervoordt NV/SA, Meys & Zonen, NV in Belgium and the consignee as "Noel Roberts Trust, c/o Freeman Group, Inc." in Santa Monica, California.  *Id*. at ¶ 12.

The HSI SA requested that the defendant statue be detained until further research could be conducted.  In the meantime, the CBP officer requested provenance documentation from the broker, Masterpiece International.  The invoice provided by Masterpiece International identified the defendant statue as "Fragment of Myron's Samian Athena, Limestone, Roman, 1st – 2nd century A.D."  The invoice also contained handwritten notations indicating that the defendant statue originated from Italy and was imported under Harmonized Tariff Schedule of the United States tariff number 9706.00.0060 (antiques of an age exceeding one hundred years).  *Id*. at ¶ 13.

On May 11, 2016, officers conducted a visual examination of the defendant statue and photographed it.  The defendant statue consists of the lower half of a human figure. Below is a photograph of the defendant statue taken by an HSI SA on or about May 11, 2016.

 / / /

1
2
3
4
5
6
7
8
9
10
11
12
13



14    *Id*. at ¶ 14.

15         In May 2016, Masterpiece International provided CBP with a copy of an invoice

16    dated November 14, 2012 purportedly for the defendant statue issued by Galerie Chenel

17    in Paris, indicating Axel Vervoordt as the buyer.  On the Galerie Chenel invoice, the

18    object is described as "a large draped statue – Roman 1st – 2nd A.D."; the object's

19    provenance is listed as "Old German collection, bought before 1980"; and the material

20    that the object is made of is not indicated.  On the invoice for the sale of the defendant

21    statue by Vervoordt to Noel Robert Trust, dated March 11, 2016, the object is described

22    as a "Fragment of Myron Samian Athena - limestone - 1st -2nd century A.D."  The

23    November 2012 Galerie Chenel invoice did not appear to be for the defendant statue

24    because the term "a large draped statue" would refer to an entire/whole draped natural

25    sized statue and a "fragment of Myron Samian Athena" would refer to only a portion of

26    a statue, which is what defendant statue is.  In addition, the invoice that Masterpiece

27    International provided to CBP contained handwritten notations indicating that the

28    defendant statue originated from Italy.  *Id*. at ¶ 15.

Masterpiece International also provided CBP with an unsworn affidavit signed by Robert Lauwers ("Lauwers"), dated May 2016.   Lauwers was listed as the "Director of the Art-historical Department" of Alex Vervoordt NV.  The affidavit stated that the defendant statue "does not originate from Italy."  This statement contradicted several of the entry documents submitted, including the invoice, which indicated that the defendant statue originated from Italy.  *Id.* at ¶ 16.

On May 27, 2016, a HSI special agent met with two individuals who worked for Masterpiece International and explained the requirements under the CPIA.  One of the individuals indicated that she would attempt to obtain the required documents from the exporter.  No additional documents were provided to CBP or HSI.  *Id.* at ¶ 17.

On June 15, 2016, the defendant statue was seized pursuant to 19 U.S.C. § 2609(a) and 19 C.F.R. § 12.104e(a) for violation of 19 U.S.C. § 2606 because the evidence showed that the defendant statue was designated archeological or ethnological material, and the documents provided to CBP by Masterpiece International were insufficient to satisfy the CPIA's requirements.  *Id.* at ¶ 18.

In July 2016, HSI received information about the defendant statue from Italy's Carabinieri for the Protection of Cultural Heritage (Comando Carabinieri Tutela Patrimonio Culturale ("TPC")).  The TPC is part of Italy's Ministry of Cultural Heritage and plays a role regarding the safety and protection of Italy's national cultural heritage.  The TPC stated that they witnessed the defendant statue in Axel Vervoordt NV/SA's possession at The European Fine Art Fair ("TEFAF") on March 21, 2011 in Maastricht, Netherlands, which would contradict Axel Vervoordt NV/SA's representation that it purchased the defendant statue in 2012, the year on the invoice provided to CBP by Masterpiece International.  The TPC requested that all efforts be made for the return of the defendant statue to Italy in accordance with the bilateral agreement between Italy and the United States.  *Id.* at ¶ 19.

Below is a photograph that TPC provided to HSI that TPC represented was taken by TPC of the defendant statue when it was on display in Vervoordt's booth at TEFAF

14

1    on March 21, 2011.



15   *Id*. at ¶ 20.

16         The defendant statue was also examined by two professors with training and

17   expertise in archeology and materials who opined that based on their analysis of the

18   defendant statue was carved out of a medium- to course-grained calcitic marble.  *Id*. at

19   ¶ 21.

20         In February 2018, an archaeologist from Italy's Ministry of Cultural Heritage

21   conducted an analysis of the defendant statue.  The archaeologist stated that the

22   defendant statue is of classical Peplophoros style (early to mid-Roman Empire), which

23   represents a copy of an original Greek sculpture.  The archaeologist stated that the

24   defendant statue appears to be the same statue that was photographed by the TPC in

25   March 2011 at TEFAF.  In the report, the archaeologist provided comparative scientific

26   and iconographic elements that indicated the defendant statue was from Italy; opined that

27   creations comparable to the defendant statue in terms of style and period were very

28   common in Italy during the Roman Empire.  The archaeologist stated the defendant

statue had not been reported as a fortuitous find nor the subject of a request for an export license, which both are compulsory by law in Italy since 1909. Based on the information and scientific aspects the archaeologist provided, the archaeologist opined that the defendant statue was looted, smuggled and illegally exported from Italy. *Id*. at ¶ 22.

Based on the above, plaintiff alleges that the defendant statue was illegally imported and entered into the United States in violation of the CPIA. Specifically, the defendant statue was part of the shipment described above, and is designated archaeological or ethnological material imported into the United States in violation of 19 U.S.C. § 2606. As a result, the defendant statue is subject to forfeiture to the United States pursuant to 19 U.S.C. § 2609(a). *Id*. at ¶ 23.

## C.   THE COMPLAINT'S ALLEGATIONS ESTABLISH THAT THE DEFENDANT STATUE IS SUBJECT TO FORFEITURE

Here, the facts alleged in the complaint establish that the defendant statue is designated archaeological or ethnological material that was illegally imported into the United States in violation of 19 U.S.C. § 2606. The defendant statue is therefore subject to forfeiture pursuant to 19 U.S.C. § 2609(a). *Id*. at ¶ 23. To prevail on its claim here, the government must establish the elements of the claim by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). In making that showing, the government may rely upon both circumstantial and direct evidence. *United States v. $291,828.00 In U.S. Currency*, 536 F.3d 1234, 1237 (11th Cir. 2008); *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 980 (9th Cir. 2002) (forfeiture determination is based on the aggregate of the facts including circumstantial evidence).

The investigation revealed multiple indicators of purportedly presented evidence such as (a) an entry invoice dated November 14, 2012 issued by Galerie Chenel in Paris, and indicating Axel Vervoordt as its buyer, for "a large draped statue" and not for the defendant statue, which is a "fragment of Myron Samian Athena" referring to only a portion of a statue; (b) an unsworn affidavit dated May 2016 by Lauwers, a Director of the Art-historical Department of Alex Vervoordt NV, stating that the defendant statue

did not originate from Italy whereas the entry invoice indicated that the defendant statue originated from Italy; (c) the TPC stating that it witnessed the defendant statue in Axel Vervoordt NV's possession at TEFAF in 2011 in Maastricht, Netherlands, which contradicted Axel Vervoordt's earlier representation of being a buyer of the defendant statue in 2012 in Paris, France.  Furthermore, in his report, the archaeologist from Italy's Ministry of Cultural Heritageto provided that the defendant statue was indeed originated from Italy and that it appeared to be the same statue that was photographed by the TPC at TEFAF in 2011.  Based on compulsory reporting requirements of fortuitous finds or export licenses requests since 1909, the archeologist concluded that the defendant statue was looted, smuggled and illegally exported from Italy.  Complaint at 15, 16, 19, and 22.

### D.    THE PROPOSED DEFAULT JUDGMENT

Because the facts admitted by the defaulting parties establish that the defendant statue is subject to forfeiture, judgment by default against the interests of all potential claimants should be entered pursuant to Federal Rule of Civil Procedure 55(b)(2).

Once a court has decided that judgment should be entered by default, the court must determine the character of the recovery to grant the plaintiff.  10A Wright, Miller & Kane, *Federal Practice and Procedure 3d* § 2688.  The proposed default judgment grants the very relief sought in the complaint (forfeiture of the defendant statue to the United States of America for disposition according to law).

/ / /

1

### III.   CONCLUSION

2

3

For the foregoing reasons, the government respectfully requests that the Court grant this motion for a default judgment.

4

DATED: August 9, 2021                    Respectfully submitted,

5

6

TRACY L. WILKISON
Acting United States Attorney

7

SCOTT M. GARRINGER
Assistant United States Attorney

8

Chief, Criminal Division

9

STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

10

11

 /s/ *Katharine Schonbachler*
KATHARINE SCHONBACHLER

12

Assistant United States Attorney

13

Asset Forfeiture Section

14

Attorneys for Plaintiff

15

UNITED STATES OF AMERICA

16

17

18

19

20

21

22

23

24

25

26

27

28