**O**

1
2
3
4
5
6
7
8
9
10

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-cv-03709-ODW (GJSx) |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT [17]** |
| v. | |
| ONE ANTIQUE ROMAN STATUE, | |
| Defendant. | |

## I.    INTRODUCTION

On June 15, 2016, U.S. Customs and Border Patrol ("CBP") seized an antique Roman Statue ("Statue") at the Los Angeles/Long Beach Seaport, suspecting it to have been looted and smuggled from Italy.  The United States of America brought a civil forfeiture action naming the Statue as the Defendant and now moves for default judgment against the Statue.  (Mot., ECF No. 17.)  The potential claimants are Axel Vervoordt; Axel Vervoordt NV/SA; Meys & Zonen, NV; Noel Roberts Trust; Freeman

Group, Inc;. and Kim Kardashian.  No claimant has appeared to contest forfeiture.  For the following reasons, the Court **GRANTS** the Motion. [1]

## II.    BACKGROUND

The Statue arrived at some point before May 3, 2016 at the Los Angeles/Long Beach Seaport.  (Compl. ¶ 5, ECF No. 1.)  CBP worked with a Homeland Security Investigations Special Agent to detain and further investigate the Statue.  (*Id.* ¶ 12.) After conducting a visual examination and speaking with the Statue's broker, Masterpiece International, CBP determined that the Statue was at some point in the past likely looted, smuggled, and illegally exported from Italy.  (*Id.* ¶¶ 13–22.)  It seized the Statue on June 15, 2016.  (*Id.* ¶¶ 5–6.)

On April 30, 2021, the United States filed a Complaint for civil forfeiture pursuant to 19 U.S.C. § 2609(a).  On August 2, 2021, the Clerk entered default against all potential claimants.  (Entry Default, ECF No. 16.)  Then, on August 9, 2021, the United States moved for default judgment.  (*See* Mot.)

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under FRCP 55(a).  Before a court can enter a default judgment against a defendant or claimant, the plaintiff must satisfy the procedural requirements set forth in FRCP 54(c) and 55, as well as Local Rule 55-1 and, when applicable, 55-2.  Local Rule 55-1 requires that the movant submit a declaration indicating: (1) when and against which party default was entered; (2)  the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and (5) that the defaulting party was properly served with notice, if required by FRCP 55(b)(2).

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

If these procedural requirements are satisfied, a district court has discretion to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). However, a default "does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal 2002). In exercising discretion, a court must consider several factors (the "*Eitel* Factors*"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the [FRCP] favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Generally, after the Clerk enters default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true, except those pertaining to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

## IV. DISCUSSION

The forfeiture of cultural property is governed by the Cultural Property Implementation Act ("CPIA"), 19 U.S.C. §§ 2601–2613. The United States enacted the CPIA as a member of the UNESCO Convention on Means of Prohibiting and Preventing the Illicit Import, Export, and Transfer of Ownership of Cultural Property ("Convention"). *See* 51 Fed. Reg. 6905 (Feb. 27, 1986); 19 C.F.R. §§ 12.104-12.104k.

Italy is also a member of the Convention, and the United States and Italy have a bilateral agreement regarding cultural property. The relevant portion of the designated list of Italy's cultural property includes the following types of archaeological material:

> Large Statuary–Primarily in marble, including fragments of statues. Subject matter includes human and animal figures and groups of figures in the round. Common types are large-scale, free-standing statuary from approximately 1 m to 2.5 m in height and life-size busts (head and

3

shoulders of an individual). Approximate date: 6th century B.C. to 4th century A.D.

Extension of Import Restrictions Imposed on Archaeological Material Originating in Italy and Representing the Pre-Classical, Classical, and Imperial Roman Periods, 76 Fed. Reg. 3012 (Jan. 19, 2011).

The CPIA prohibits importation of designated archeological or ethnological material unless the importer provides a certification from the state party authorizing its importation or other documentation permitted by regulation. 19 U.S.C. § 2606; 19 C.F.R. §§ 12.104a(b), 12.104c. Without such documentation (or application of any exemptions outlined in 19 U.S.C. § 2611), the designated artifact is subject to seizure by, and forfeiture to, the United States. 19 U.S.C. § 2609(a); 19 C.F.R. § 12.104e(a).

Here, the United States alleges that the Statue's broker, Masterpiece International, failed to provide the required documentation or evidence that an exemption applies. (Compl. ¶¶ 13–18.) Accordingly, the United States seized the Statue and now seeks its forfeiture so that it may dispose of the Statue according to law. (Compl. ¶ 23.)

## A.  Procedural Requirements

A Proof of Service filed in these proceedings indicates that all potential claimants were served with the Summons and Complaint by mail. (Notice Proof Service Summons & Compl., ECF No. 10.) Moreover, a Declaration of Publication indicates that the United States published notice of the action on www.forfeiture.gov for 30 consecutive days. (Decl. Publication, ECF No. 11.)

FRCP Supplemental Rule G governs forfeiture actions in rem such as this. Supplemental Rule G(4)(1)(i) provides that "[a] judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders." Here, the United States published notice of the action within a week of filing the Complaint, which the Court finds is a reasonable amount of time. *United States v. All Monies, Funds, & Credits on Deposit*

1    *at Loyal Bank Ltd. in St. Vincent & The Grenadines, Held In the Names of Ace Guide*
2    *Holdings Ltd.*, No. 2:19-CV-00283-MCE-KJN, 2020 WL 3530615, at *2–*3 (E.D. Cal.
3    June 30, 2020) (finding notice given three months after filing of complaint to be
4    reasonable). The Court further finds that the published notice complies with the formal
5    requirements of Supplemental Rule G(4)(a)(ii).

6    Moreover, the United States must also provide direct notice to all potential
7    claimants.  Suppl. Rule G(4)(b)(i).  This notice "must be sent by means reasonably
8    calculated to reach the potential claimant."  Suppl. Rule G(4)(b)(iii)(A).  Moreover,
9    "[n]otice to a person from whom the property was seized who is not incarcerated when
10   notice is sent may be sent to the last address that person gave to the agency that seized
11   the property."  Suppl. Rule G(4)(b)(iii)(E).

12   Here, the United States provides evidence showing when and how notice of this
13   action was provided to each potential claimant.  (Decl. of Katharine Schonbachler
14   ("Schonbachler Decl.") ¶¶ 5–15, Exs. C–P, ECF No. 17-2.)  This evidence indicates
15   that the United States attempted to serve each potential claimant at the claimant's last
16   known address.

17   After an initial examination of the Motion, the Court directed the United States
18   to file an additional declaration regarding its attempts to locate and serve Freeman
19   Group.  (Mins., ECF No. 18.)  The United States filed its additional declaration on
20   October 14, 2021, verifying that the United States attempted to serve Freeman Group
21   at both its last known address and its second last known address.  (Suppl. Decl. Kathy
22   Schonbachler ("Schonbachler Decl.") ¶ 2, ECF No. 21.)

23   Having examined the initial Schonbachler Declaration, the supplemental
24   Schonbachler Declaration, and the supporting documentation, the Court finds that the
25   notice provided to each potential claimant complies with the formal requirements of
26   Supplemental Rule G(4)(b).  The Court further finds that each potential claimant was
27   given notice in a way that was reasonably calculated to reach that claimant.  Suppl.
28   Rule G(4)(b)(iii)(A); *Ace Guide Holdings*, 2020 WL 3530615, at *3.

Finally, the Court finds that the Motion substantially complies with the requirements for default judgment set forth at Local Rule 55-1. (*See* Schonbachler Decl. ¶¶ 2, 19–23.)

**B.     Merits of Motion**

The Court turns to the merits of the Motion, guided by the *Eitel* factors. Pursuant to the second and third *Eitel* factors, courts evaluate the substantive merits of the movant's claims and the sufficiency of its pleadings, which "require that a plaintiff state a claim on which the plaintiff may recover." *PepsiCo*, 238 F. Supp. 2d at 1177 (cleaned up). For the purpose of default judgment, all well-pleaded allegations in the complaint, except those relating to damages, are admitted by the potential claimants' failure to respond and are assumed to be true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

The United States' allegations establish that it is entitled to default judgment of forfeiture. Masterpiece International, the Statue's broker, did not provide the CBP with the documentation required by the CPIA or otherwise show that an exception to the CPIA applies. (Compl. ¶ 17.) The CBP and Homeland Security were in contact with Masterpiece International regarding the Statue and the relevant CPIA requirements, and meaning that Masterpiece International was aware of these requirements. (Compl. ¶¶ 15–17.) Confirming that Masterpiece International does not have, and likely cannot provide, the required documentation, in February 2018, an archaeologist from Italy's Ministry of Cultural Heritage analyzed the statue and concluded that the Statue likely originates from the early to mid-Roman Empire and was likely looted, smuggled, and illegally exported from Italy. (Compl. ¶ 22.) This finding was based in part upon a discrepancy between a photograph of the Statue taken in the Netherlands in March 2011, on one hand, and the representation of Axel Vervoordt NV/SA that Vervoordt found and purchased the Statue in France in 2012, on the other hand. (Compl. ¶ 19.) Italy's Ministry now requests "that all efforts be made for the return of the defendant

statue to Italy in accordance with the bilateral agreement between Italy and the United States." (*Id.*)

The remaining *Eitel* factors are of lesser relevance in the context of a civil forfeiture default judgment motion such as this. No claimant has appeared, and if the Court does not issue a judgment, the Statue will remain in the United States' custody indefinitely, consuming taxpayer resources and depriving Italy of a cultural artifact that belongs to Italy under an international agreement.

In summary, the United States successfully establishes that the Statue is designated archaeological or ethnological material that was illegally imported into the United States in violation of 19 U.S.C. § 2606 and is therefore subject to forfeiture pursuant to 19 U.S.C. § 2609(a). The United States is accordingly entitled to default judgment ordering that the rights of all potential claimants in the statue are condemned and forfeited and directing the United States to dispose of the statue according to law. 19 U.S.C. § 2609(a).

## V.    CONCLUSION

For the foregoing reasons, the United States' Motion for Default Judgment is **GRANTED**. (ECF No. 17.) The Court will issue Judgment consistent with this Order.

**IT IS SO ORDERED.**

February 23, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**